**UNITED STATES of America, Plaintiff,**

v.

**Joseph C. KELLY and Lloyd E. Hart, Defendants.**

**No. CR–R–81–11–ECR.**

United States District Court, D. Nevada.

June 4, 1981.

494

B. Mahlon Brown, U. S. Atty. by Edward R. J. Kane, Asst. U. S. Atty., Reno, Nev., for plaintiff.

Manuel Valenzuela, Los Angeles, Cal., for Kelly.

Robert J. Peyton, Reno, Nev., for Hart.

### ORDER

EDWARD C. REED, Jr., District Judge.

The defendants have filed various pre-trial motions in this case. Each has been responded to by the Government. Defendant Kelly's motion for severance is granted, the Government having stipulated to severance on account of defendant Hart's present unavailability while undergoing psychiatric evaluation at Springfield F.C.I., pursuant to separate order of the Court. The Court now rules on the remainder of defendant Kelly's motions as follows:

1. Defendant's motion to suppress the identification made from a photo array prepared by the Elko police is denied. The photo arrays consisted of ten pictures including one each of the defendants. Defendant Kelly alleges that the photo array

is unnecessarily suggestive and conducive to irreparable mistaken identification and that therefore any identification from the array should be suppressed. *See Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The photo array has been lodged with the Court for its own evaluation. None of the witnesses who identified the defendant from the photos were present at the hearing on this matter. The Court limits its decision to the constitutionality of the array itself and any identification that could have been made from it.

■ The validity of a photographic identification is to be evaluated in light of the particular facts and surrounding circumstances of each case. *See Mata v. Sumner*, 611 F.2d 754, 757 (9th Cir. 1979).* Unnecessary suggestability alone in photographic identification does not require exclusion. *Id.*

■ Here ten photographs were presented to several identifying witnesses. Each photograph was of a white male in jail garb. Some of the men had moustaches, others were clean shaven. The Court notes that five of the photographs were very similar in appearance to the photograph of the defendant. In this Circuit, an array of six photographs has been found not to be unduly suggestive. *United States v. Collins*, 559 F.2d 561 (9th Cir. 1977) *cert. denied*, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 395; *see also United States v. Gantt*, 617 F.2d 831 (D.C.Cir.1980). Furthermore, mere variations in appearance among persons or photographs presented to a witness do not automatically invalidate a pretrial identification. *United States v. Robertson*, 606 F.2d 853 (9th Cir. 1979). The Court having reviewed the photographic array does not find it to be unduly suggestive or otherwise constitutionally defective.

2. Defendant Kelly's motion to suppress the "show-up" identification made by Jerry Elsling at Room 12 of the Marquis Motel in Elko on March 12, 1981, is granted. The Court finds that the circumstances sur-

rounding this identification were unduly suggestive and unreliable.

■ In determining the admissibility of this identification, reliability is the linchpin of the Court's analysis. *See Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Evidence based on unnecessarily suggestive identification procedures need not be excluded when the totality of the circumstances suggests that the identification was reliable. *Id.* 114–16, 97 S.Ct. 2253–54; *see also Neil v. Biggers*, 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972) (reliability of procedure rather than suggestiveness of the procedure is the crucial concern; identification inadmissible only if substantial likelihood of irreparable misidentification). In *Neil v. Biggers* the Supreme Court set forth five factors to analyze reliability: 1) the witness' opportunity to view the suspect at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of any earlier description of the subject; 4) the level of certainty demonstrated at the confrontation; 5) the lapse of time between the crime and the confrontation. *Neil v. Biggers, supra* at 199–200, 93 S.Ct. at 382; *see also United States v. Field*, 625 F.2d 862 (9th Cir. 1980).

■ Mr. Elsling is a bartender at the Stockmen's Hotel in Elko. At about 5:00 A.M. on March 12 while tending bar he served both defendants. They were the only persons seated at the bar. Defendant Kelly paid for their drinks with a fifty dollar bill, a denomination usually not received at that hour in the Stockmen's bar. The defendants sat at the bar for five to ten minutes. Mr. Elsling spoke to them, face to face, for about two to three minutes. He recalled that one had a moustache and a leather or vinyl jacket on. Elsling noted the defendants did not gamble but left with the change from the fifty after one drink.

A short time later, Elko police appeared at the Stockmen's, and a rumor began circulating at the hotel that bad money—i. e.,

---

* *Vacated and remanded on other grounds,* ——
U.S. ——, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

counterfeit fifty dollar bills, was circulating in town. Elsling remembered the fifty dollar bill given to him by the two persons at the bar. He showed it to the police who told him it was one of the bad bills. He told the police he could identify who gave him the fifty.

Approximately forty-five minutes later, at about 7:00 A.M., Elsling received a call from the Elko police stating that they had several suspects in custody at the Marquis Motel and asked if he could identify them. Thereafter Randy Parks, an Elko police officer known to Elsling, came to the Stockmen's to pick up Elsling. At that time he asked Elsling if he could come with him since the men who had been at his bar were now in custody, and the police wanted Mr. Elsling to verify their identity.

Officer Parks took Elsling to Room 12 of the Marquis Motel. In the room there were four to five police officers, in uniform, and the two defendants, partially clothed and seated on the bed. From the doorway of the room, after a period of fifteen to thirty seconds, Elsling was asked, "Are these the two in the bar?" Elsling answered in the affirmative and then left.

At the hearing Elsling stated that he remembered the defendants' faces very well from having seen them in the bar. He made an in-court identification of defendant Kelly seated alone with his attorney at counsel table. Prior to that time, and since the show-up, Elsling had not seen the defendant.

The Court has weighed the indicia of reliability (outlined in the five steps of *Neil v. Biggers, supra*) against the corrupting tendencies and suggestiveness of the "show-up" to determine the reliability of the identification made in the motel room. The Court finds that Elsling had ample opportunity to view the defendants, that he was attentive when he saw them at the bar, and that the time lapse between when he saw them at the bar and when he identified them at the Marquis Motel, about two hours, was relatively brief. The Court was not presented with Elsling's prior description of the defendants and cannot compare it to the actual appearance of defendants at the time of the motel room show-up. The Court also notes that at both his in-court identification and the one at the motel that Mr. Elsling was quite positive. It thus appears that the indicia of reliability are quite strong.

Against this is the suggestiveness of the confrontation. Elsling was told by a police officer familiar to him, whom he knew as Randy, that the men he had seen at the bar were in custody. On arriving at the motel with Randy he was taken to a room where he saw four or five uniformed police officers standing by two seated, partially clothed men. He made his identification after some fifteen to thirty seconds from the doorway of the room. He was asked by one of the officers whether these were the men in the bar. The Court finds that this procedure was unnecessarily and impermissibly suggestive to a degree that it outweighs the indicia of reliability and under the circumstances must be suppressed.

Subsequent identifications, by Elsling, in court during the trial of the case will not be suppressed, if it can sufficiently be demonstrated that the taint of the suppressed show-up can be sufficiently attenuated. *See Green v. Loggins*, 614 F.2d 219 (9th Cir. 1980). The reliability of Elsling's first observation and the independence of any identification subsequent to the show-up will determine the admissibility of further identification testimony.

3. Defendant Kelly's alternative motion for a lineup is denied. An accused has no absolute or constitutional right to a lineup. *United States v. Robertson, supra* at 857–58. The Court notes that defendant Kelly has altered his appearance somewhat since his arrest by shaving his moustache and cutting his hair. He has been identified positively by several persons from a valid photo array. He has asserted no real basis for a lineup. *See generally Robertson, supra.*

4. Defendant Kelly's motion to suppress evidence seized from his motel room is denied. The search and seizure was pursuant to a valid search warrant.

The defendant's contention that the warrant was improper allegedly because it was based on a prior non-consensual warrantless search of his motel room at the Marquis Motel is without merit. The basis of the Court's determination is the testimony received at a hearing on this motion. At that hearing Chief Fobes of the Elko Police Department and defendant Kelly testified.

Chief Fobes testified that on or about March 12, 1980, it came to his attention that counterfeit fifty dollar bills were being passed in Elko. The persons passing these bills were described as two white males, one about thirty-five years of age, six feet to six feet two inches, one hundred and eighty pounds, and wearing a tan/brown leather jacket and a beige cowboy hat with feathers; the other was described as in his mid-fifties, slim build, with obviously false teeth, and wearing a leather jacket and cowboy hat with feathers. In addition, one of the pair was seen with a diamond ring and one was seen wearing a "walking Liberty" fifty-cent piece in a silver belt buckle. The pair was seen smoking Alpine or Kool cigarettes and collecting matches. A methodical search was organized by the Elko police to locate these persons.

After the canvas began, and after speaking with Mr. Elsling, the bartender at the Stockmen's Hotel who had received one of the counterfeit bills, it was learned that the above described persons were recently seen at the Ranch Inn in Elko. The Marquis Motel is directly across the street from the Ranch Inn. On questioning the room clerk at the Marquis it was learned that persons meeting the description of those sought by the Elko police were in Room 12. A 1974 AMC Matador automobile which the clerk said these persons were driving, was parked at the Marquis. In the car were seen numerous matchbooks and packs of Kool and Alpine cigarettes. Defendants had been seen collecting matchbooks and smoking these brands of cigarettes. Chief Fobes asked for and was given the keys to Room 12.

On arriving at Room 12 at approximately 6:00 A.M., Chief Fobes, in the company of two other officers, all in uniform, knocked twice.

The more credible of the testimony follows:

A voice from within asked, "Who is it?"

The response, "Elko Police Department," was given. At that point the door opened one-third to one-half way and Mr. Kelly appeared in his undershorts.

Mr. Kelly asked, "What do you want?"

The police responded, "We'd like to talk to you, can we come in?"

The defendant Kelly stepped back and the police entered the room. Defendant Hart was asleep in bed and had to be awakened. Both defendants were Mirandized. Defendants acknowledged they understood their rights, but said nothing further.

At that time, Mr. Elsling, the bartender at the Stockmen's Hotel, was called to come to the Marquis to see if he could identify either Hart or Kelly.

While in the room, in plain view, the police saw a large suitcase full of money, two cowboy hats, a diamond ring, a "walking Liberty" fifty cent piece in a silver belt buckle, and two leather jackets. Soon thereafter Mr. Elsling arrived and positively identified the defendants.

At that point, even without the identification by Mr. Elsling which has been suppressed, probable cause existed to arrest the defendants due to the items seen in the car and the motel room. The defendants were arrested and taken to the police station. No items of evidence were taken from the room at that time and it was secured by the Elko police while a search warrant was obtained. Such a warrant was obtained and the evidence in question seized.

▮▮▮ The Court finds that the initial entrance into the motel room by the police was consensual. Voluntary consent vitiates the need for a search warrant, even in the absence of probable cause or exigent circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). At the time consent to enter the room was given, neither defend-

ant was in custody and Mr. Kelly had legitimate authority to allow the police into the room. The things seen in plain view by officers once in the room were valid subjects for the affidavit on which the search warrant was based. The police observation under those circumstances did not amount to an unlawful search. *Cf. United States v. Orozco*, 590 F.2d 789, 792 (police who, during investigatory stop, looked in car windows of suspect's car on public street and saw narcotics in plain view did not "search" car). No Fourth Amendment rights of Kelly were violated. The evidence seized will not be suppressed at trial.