LESTER FRANK CANADA AND MICHAEL SMITH, APPELLANTS, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 18268

LESTER FRANK CANADA AND MICHAEL SMITH, APPELLANTS, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 18499

June 24, 1988                                   756 P.2d 552

*Beury & Schubel,* Las Vegas, for Appellants.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Lester Frank Canada ("Canada") and Michael Smith ("Smith") were accused of jointly participating in two armed robberies. They were tried together in separate jury trials for each robbery and convicted of multiple crimes incident to each robbery.[1] Their appeals from these convictions were ordered consolidated for oral argument.

Canada and Smith challenge their convictions for the robbery of the Sit 'N Bull lounge in Las Vegas on two grounds. First, Canada and Smith contend that the shotguns that they used in the robbery should not have been introduced into evidence because they were the fruits of an illegal search of their apartment. Second, Canada and Smith contend that evidence of the other robbery that they were accused of committing, the robbery of the Charleston Heights Liquors in Las Vegas, should not have been allowed into evidence to prove their identities because such evidence was more prejudicial than probative.

Regarding their first challenge to the Sit 'N Bull convictions, Canada and Smith claim that Smith's consent to the warrantless search of their apartment was not given voluntarily. This claim is without merit. Voluntariness is a question of fact to be deter-

---

[1]Canada and Smith were convicted of the following crimes incident to the robbery of the Sit 'N Bull lounge in Las Vegas: robbery with use of a deadly weapon, battery with use of a deadly weapon, battery, conspiracy to commit burglary with use of a deadly weapon, and burglary.

For the burglary of the Charleston Heights Liquors in Las Vegas, Canada and Smith were convicted of the following crimes: conspiracy to commit robbery, burglary, and robbery with use of a deadly weapon.

mined from the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218 (1973); Davis v. State, 99 Nev. 25, 656 P.2d 855 (1983). The record contains substantial evidence to support the trial court's finding that Smith voluntarily consented to the apartment search and that this consent was not later withdrawn. *See* Tomarchio v. State, 99 Nev. 572, 665 P.2d 804 (1983) (trial court's finding of fact should not be disturbed on appeal if supported by substantial evidence).

Canada and Smith further claim that the shotguns were illegally seized because the area where the shotguns were found was outside the scope of any consent that might have been given and because the shotguns were not in plain view. We agree that a search conducted pursuant to consent must be limited to the terms of the consent. United States v. Sealy, 830 F.2d 1028 (9th Cir. 1987); People v. Thiret, 685 P.2d 193 (Colo. 1984). Whether the scope of consent has been exceeded is a factual question to be determined by examining the totality of the circumstances. *Sealy,* 830 F.2d at 1032.

The shotguns were discovered by a police officer as he lifted the mattresses on a bed in order to search underneath the bed for a potentially armed and dangerous subject.[2] Viewing the circumstances in their totality, we conclude that by looking underneath the bed the officer did not exceed the scope of Smith's express consent for the police "to look around" the apartment for other male subjects.[3] " 'It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.' " Woerner v. State, 85 Nev. 281, 284, 453 P.2d 1004, 1005 (1969) (citations omitted). It follows that since the officer lawfully lifted the mattresses, the subsequent inadvertent discovery of the shotguns falls within the ambit of the "plain view" doctrine.

Canada's and Smith's second challenge to the Sit 'N Bull convictions—that evidence of the other robbery should not have been admitted—is also without merit. Nevada's Evidence Code prohibits the use of crimes, wrongs, or acts as evidence of a

---

[2]This is the recommended method for a police officer to search under a bed for a potentially armed and dangerous subject.

[3]As the police officer who found the shotguns had already discovered Canada hiding in another room in the space between a bed and the wall with a sheet pulled over him, it was logical for the officer to look for other suspects under the bed where the shotguns were ultimately found.

person's character to prove conduct. NRS 48.045(2).[4] Such evidence may, however, be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in those cases where such evidence is more probative than prejudicial. NRS 48.045(2); NRS 48.035; Daly v. State, 99 Nev. 564, 665 P.2d 798 (1983); Williams v. State, 95 Nev. 830, 603 P.2d 694 (1979). The decision to admit such evidence rests within the sound discretion of the trial court. Brinkley v. State, 101 Nev. 676, 708 P.2d 1026 (1985).

The trial court admitted evidence of the Charleston Heights robbery at the Sit 'N Bull trial for the limited purpose of proving the identities of the perpetrators of the Sit 'N Bull robbery, pursuant to NRS 48.045(2). Canada and Smith contend that the trial court erred in admitting this evidence because the danger of prejudice outweighed its probative value. Specifically, Canada and Smith insist that the evidence was improperly admitted because (1) the witnesses to the Sit 'N Bull robbery were less than definite in their identifications, and (2) there was nothing unique about the *modus operandi* allegedly exhibited in the two robberies.

In Reed v. State, 95 Nev. 190, 591 P.2d 274 (1979), we explained that "questions raised as to the credibility of the witnesses' trial identification of appellant served to highlight the necessity for additional evidence which could help establish the identity of the perpetrator, and buttress the decision of the trial court to admit evidence of other crimes for that purpose." *Reed,* 95 Nev. at 193, 591 P.2d at 276. Contrary to the assertions of Canada and Smith, the difficulty in identifying the perpetrators of the Sit 'N Bull robbery argues for, rather than against, the admission of evidence of the Charleston Heights robbery.

In Coty v. State, 97 Nev. 243, 627 P.2d 407 (1981), we stated that "[e]vidence of prior criminal behavior may only be admitted to prove identity when its prejudicial effect is outweighed by the evidence's probative value *and* when that prior behavior demonstrates characteristics of conduct which are unique and common to both the defendant and the perpetrator whose identity is in

---

[4]NRS 48.045 provides in part:

> 1. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. . . .
>
> . . . .
>
> 2. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

question." *Coty,* 97 Nev. at 244, 627 P.2d at 408 (emphasis in original).

Canada and Smith claim that there was nothing unique about the two robberies: a conspirator would simply enter a bar, case the place, and then return later with more men to commit "a brutal, straightforward armed robbery." This argument is singularly unconvincing. The many similarities between the two crimes make evidence of the second highly probative of the identities of the perpetrators of the first. These similarities include the following: both robberies took place in deserted bars very late at night; in both robberies one of the perpetrators first entered alone and ordered a beer in order to case the bar; in both robberies at least one of the perpetrators wore a mask; and in both robberies the perpetrators were armed with shotguns. Finally, the *modus operandi* common to the two robberies was unique in comparison with other robberies in the manner in which the perpetrators savaged their victims. We conclude that the difficulty in identifying the perpetrators coupled with the high degree of similarity between the crimes made the evidence of other robbery more probative than prejudicial.

Canada and Smith also challenge their convictions for the robbery of the Charleston Heights Liquors on the sole ground that the at-the-scene identifications of them were so impermissibly suggestive that the identifications denied them a fair trial.[5] After they were apprehended, Canada and Smith were placed in front of a police car in which two eyewitnesses to the Charleston Heights Liquors robbery were sitting; both witnesses identified the pair. Canada and Smith claim the following factors made the identification procedure unnecessarily suggestive: (1) they were brought out in handcuffs and surrounded by police officers; (2) they were made to kneel in front of the patrol car; (3) the two witnesses were told that the officers had persons in custody that may have been the suspects; and (4) the two witnesses were sitting together in the police car as they viewed Canada and Smith.

The test is whether upon review of the totality of the circumstances " 'the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [appellant] was denied due process of law.' " Banks v. State, 94 Nev. 90, 94, 575 P.2d 592, 595 (1978) (quoting Stoval v. Denno, 388 U.S. 293, 301-302 (1967)).

---

[5]Canada and Smith also contend that they were entitled to a formal police line-up. An accused has no absolute or constitutional right to a line-up. United States v. Kelly, 516 F.Supp. 493 (D.Nev. 1981).

We note initially that referring to a subject as a "suspect" is not by itself an impermissible suggestion. *United States v. Kessler,* 692 F.2d 584 (9th Cir. 1982). We also believe that "[t]he use of handcuffs or other indicia of custody will not invalidate a show-up, at least where necessary for the prompt and orderly presentation of the suspect, consistent with protection of the officers and witnesses." *Kessler,* 692 F.2d at 586. Considering the violent nature of the crimes in the present case, it is difficult to argue that handcuffs were not warranted in the identification procedure.

Even if the at-the-scene identification procedure was unnecessarily suggestive, the resulting testimony need not be excluded if it is determined that it was reliable. *Banks,* 94 Nev. at 96, 575 P.2d at 596 (citing Manson v. Brathwaite, 432 U.S. 98 (1977)). The reliability of an identification procedure is determined by weighing the "corrupting effect of the suggestive identification" against the following factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Brathwaite,* 432 U.S. at 114.

We hold that the record is replete with indicia of reliability, measured by the criteria of *Brathwaite,* and that due process was not violated.

Careful scrutiny of Canada's and Smith's remaining contentions reveals them to be meritless. Accordingly, we affirm the judgments of conviction.