993 P.2d 44 (2000)
The STATE of Nevada, Appellant,
v.
Jessie JOHNSON and Lashawn Johnson, Respondents.
No. 31368.
Supreme Court of Nevada.
January 27, 2000.
Rehearing Denied March 1, 2000.
Frankie Sue Del Papa, Attorney General, Carson City, Stewart L. Bell, District Attorney, James Tufteland, Chief Deputy District Attorney, and Gerald J. Gardner, Deputy District Attorney, Clark County, for Appellant.
John M. Turco, Las Vegas, for Respondent Jessie Johnson.
Morgan D. Harris, Public Defender, and Daren B. Richards and Elizabeth M. Quillin, *45 Deputy Public Defenders, Clark County, for Respondent Lashawn Johnson.
BEFORE THE COURT EN BANC.

OPINION
LEAVITT, J.
Nevada Highway Patrol Trooper Lt. Todd Ellison and an investigator from the Nevada Division of Investigation were riding together on patrol as part of "Desert Hoax," a multi-agency criminal interdiction operation. Ellison received a call from another investigator from the division that a vehicle had failed to stop at a stop sign at the bottom of the northbound overpass off-ramp of Interstate 15 in Clark County. Ellison was in full uniform and driving a marked Nevada Highway Patrol vehicle.
Ellison stopped the 1988 Buick with California plates and approached the driver, respondent Jessie Johnson. Respondent Lashawn Johnson was the sole passenger in the automobile. The trooper asked Jessie for his driver's license, registration and insurance. He ran a check on the license, examined the other documents given to him by respondent Jessie Johnson, and gave him a verbal warning rather than a citation.
The trooper asked the purpose of Jessie's trip. He replied that he was going to Montana to do carpentry work with some of his relatives and stated that he had his tools in the trunk and that Ellison could go ahead and look in the trunk to see the tools. Ellison asked Jessie whether he had any guns in the vehicle. Jessie made eye contact with Ellison and stated, "No." Jessie was asked if he had any alcohol, and Jessie continued making eye contact and said, "No." Ellison asked Jessie if he had any drugs in the car. Jessie averted his gaze, looked back to the car, dropped his head, and said, "No, you can go ahead and look." The trooper also testified that he asked Jessie if he could search the vehicle and Jessie replied, "Yes."
Russell Owens, a trooper with twenty-one years experience as an officer and who had conducted thousands of vehicle searches, arrived to conduct the search of the vehicle. He was in full uniform and driving a Nevada Highway Patrol vehicle. He began by searching the trunk where he observed a toolbox and some tools. He searched the backseat area by pulling the backseat out of the car and placing it on the passenger side of the front seat. He then pulled up the carpet in the backseat area.
Owens searched the front seat and the dashboard areas. On the dashboard area just below the glove box, Owens noted that the screws on a panel were not the type of black screws that are normally used in automobiles, but were shiny, non-factory screws. He removed three screws directly below the hinge of the glove box, a panel dropped and Owens recovered three bindles of narcotics. Owens then searched the rest of the car but did not find any other area which would indicate any concealment. The entire search took less than ten minutes. The sole issue before this court is whether the district court erred in determining that the search in this case exceeded the scope of consent and in granting the motion to suppress evidence.[1]
The district court granted a motion to suppress the evidence on the grounds that a reasonable person would not have understood his general consent to search a car for drugs, alcohol or weapons would authorize the officer to remove screws and pry a panel from the vehicle.
Findings of fact in a suppression hearing will not be disturbed on appeal if *46 supported by substantial evidence. See Rice v. State, 113 Nev. 425, 427, 936 P.2d 319, 320 (1997) (citing Tomarchio v. State, 99 Nev. 572, 575, 665 P.2d 804, 806 (1983)). Further, a district court's findings are reviewed under a deferential standard. See Hayes v. State, 106 Nev. 543, 550 n. 1, 797 P.2d 962, 966 n. 1 (1990).
"[A] waiver and consent, freely and intelligently given, converts a search and seizure which otherwise would be unlawful into a lawful search and seizure." State v. Plas, 80 Nev. 251, 254, 391 P.2d 867, 868 (1964). "[T]he voluntariness of [a] consent must be proved by the [s]tate by clear and convincing evidence." Lightford v. State, 90 Nev. 136, 139, 520 P.2d 955, 956 (1974). "[A] court must distinguish between the peaceful submission by the arrested suspect to the authority of a law enforcement officer, from an intelligent and intentional waiver of a constitutional right." Thurlow v. State, 81 Nev. 510, 515, 406 P.2d 918, 921 (1965). "Whether in a particular case an apparent consent to search without a warrant was voluntarily given is a question of fact." Plas, 80 Nev. at 253, 391 P.2d at 868.
Any search must be limited to the terms of the consent and "[w]hether the scope of consent has been exceeded is a factual question to be determined by examining the totality of the circumstances." Canada v. State, 104 Nev. 288, 291, 756 P.2d 552, 553 (1988). "This court is not a fact finding tribunal; that function is best performed by the district court." Zugel v. Miller, 99 Nev. 100, 659 P.2d 296 (1983). The trial court is much better equipped to resolve the weight and credibility of witnesses.
The district court examined the scope of the consent and concluded the consent to search did not include the right to dismantle the car, citing State v. Arroyo-Sotelo, 131 Or.App. 290, 884 P.2d 901, 905 (1994). If Jessie did voluntarily consent to a search, would he have consented to the dismantling of his automobile? Innocent citizens must not be stopped on the pretext of a traffic violation and have their automobiles dismantled when a police officer has nothing more than a "hunch" that contraband may be present. Should we allow law enforcement to treat the Fourth Amendment as an obstacle to overcome rather than recognizing the rights of our citizens to be free from unreasonable searches and seizures?
There was no clear and convincing evidence Jessie consented to the dismantling of the car or that he voluntarily gave up his constitutional right. Instead, he merely submitted to authority.
There was substantial evidence to support the district court's ruling and we defer to the court's findings. The order of the district court suppressing the evidence obtained during the search is affirmed.
ROSE, C.J., concurs.
AGOSTI, J., with whom BECKER, J., agrees, concurring:
I write separately to underscore my opinion that Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), supports the majority view and is misapplied by the dissent. The rule enunciated in Jimeno requires an inquiry as to whether it is objectively reasonable to construe the consent to search the vehicle in this case to include consent to dismantle the vehicle. See id. at 249, 111 S.Ct. 1801. I conclude that no reasonable police officer could expect that by being told that he can "go ahead and look" for drugs and by hearing "yes" in response to the officer's request for permission to search, the officer is entitled to take apart the vehicle. Nor would any reasonable person expect such a search when giving that consent.
The facts, holding and dictum of Jimeno apply to the search of closed containers inside a vehicle. In Jimeno, the officer received consent to search a vehicle for narcotics. The officer opened a folded brown paper bag on the vehicle's passenger floorboard and found cocaine inside. The United States Supreme Court concluded from these simple facts that "it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs." Id. at 251, 111 S.Ct. 1801. "A reasonable person may be *47 expected to know that narcotics are generally carried in some form of a container." Id. In so finding, the Court distinguished Jimeno from State v. Wells, 539 So.2d 464 (Fla.1989), aff'd on other grounds, Florida v. Wells, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).[1]Jimeno, 500 U.S. at 251-52, 111 S.Ct. 1801. In Wells, the warrantless search of a locked briefcase in a vehicle's trunk was found to be unreasonable despite a consent to search the trunk. The Jimeno Court stated that "[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag." Id. at 251-52, 111 S.Ct. 1801. If the Jimeno Court believed that breaking open a locked briefcase was unreasonable, it would certainly conclude that dismantling the structure of a vehicle is also unreasonable.
The dissent concludes that "upon noting previous tampering, ... [i]t would have been clear to the officer that a part of the vehicle, not ordinarily accessible, had been previously opened and was a compartment which easily could have contained drugs." This may very well be true, given the officer's training and expertise in crime detection, but it is not the standard set forth in Jimeno. Rather than analyze the vehicle search from the officer's perspective of where contraband may be hidden, we are required to judicially determine "what would the typical reasonable person have understood by the exchange between the officer and the suspect." Jimeno, 500 U.S. at 251, 111 S.Ct. 1801.
The dissent would extend the conclusion of Jimeno well beyond folded paper bags, to the very structure of the vehicle itself. In my opinion, this defies the standard of objective reasonableness required by Jimeno and as applied by the district court below.
All the cases cited by the dissent involve searches of containers or easily accessed compartments within a vehicle. None stand for the dissent's view that a general consent to search a vehicle includes dismantling the vehicle until the driver explicitly stops the search in progress. To illustrate the point, in United States v. Gutierrez-Mederos, 965 F.2d 800, 803-04 (9th Cir.1992), cited by the dissent, the circuit court concluded that unlocking a side panel compartment inside the hatchback area of a vehicle did not exceed the scope of the driver's general consent to search for drugs or weapons because the nature of that search was not invasive. The court specifically noted:
The record indicates that [the trooper] did not pry open or break into the side panel, but instead used the key. Nor did [trooper] Anderson force the loose cardboard divider apart, but rather pulled it back.
Id. at 804. The court obviously noted the significance of the lack of breaking or force in conducting the search. Had the trooper removed screws or otherwise dismantled the side panel compartment in Gutierrez-Mederos, the circuit court may well have concluded that the search exceeded the scope of the driver's general consent.
United States v. Garcia, 897 F.2d 1413 (7th Cir.1990), is also instructive. There, after the occupants consented to a search for drugs or weapons, the trooper's "suspicions were aroused when he noticed the lack of window cranks and door handles on both doors and mismatched and ill-fitting screws that held the interior door panels in place." Id. at 1416. Upon closer visual inspection, the trooper and another agent "observed grey packages wedged inside the door." Id. They removed the driver's side door panel and found marijuana. Id. The circuit court upheld the search on the ground of probable cause, concluding that the "visual observation" of the packages inside the door established probable cause. Id. at 1420. However, before doing so, the court analyzed the search based on the occupants' general consent and stated:
[The trooper's] request to search was directly linked to his inquiry regarding the presence of drugs or weapons in the truck. Without more, police can only search areas *48 these items may reasonably be expected to be found. The opening of door panels is not normally included in this set of areas to be searched. Such a search is inherently invasive, and extends beyond the consent under these circumstances.

Id. at 1419-20 (emphasis added). Thus, it is clear that the court in Garcia would not have approved dismantling the truck based on consent alone. See also State v. Swanson, 172 Ariz. 579, 838 P.2d 1340, 1345, 1345 n. 5 (Ariz.Ct.App.1992) (relying on Garcia and Jimeno and concluding that tearing a car apart by removing door panels exceeded the scope of consent to "take a look in the car" for drugs, weapons or large sums of money).
I doubt any reasonable citizen would believe he or she was consenting to the kind of search that occurred here based upon the exchange that occurred here. Nor could a reasonable officer expect, based upon the dialog that occurred here, that permission had been given to remove a backseat, pull up carpeting, or remove screws from a panel below a glove box.
A reasonable person, contrary to the supposition of the dissent, would not be thinking about all the possible ingenious devices employed for drug concealment by the enterprising drug trafficker much less be consenting to an officer's investigation of all possible manner of smuggling when that citizen authorizes a search.
In the context of this case, the Fourth Amendment's protection from police overreaching is embodied in the requirement of objective reasonableness. The dissent's view would erode in a serious and significant way this important constitutional protection.
BECKER, J., concurs.
SHEARING, J., with whom YOUNG and MAUPIN, JJ., join, dissenting:
I would reverse the order of the district court suppressing the evidence found in the vehicle registered to Jessie Johnson.
The majority assumes that the district court based its decision to suppress the evidence on a finding of fact regarding the scope of the consent in this particular case as required by Canada v. State, 104 Nev. 288, 291, 756 P.2d 552, 553 (1988). The district court did not do so. In Canada this court said that whether the scope of the consent is exceeded is a question of fact to be determined from the totality of the circumstances in the particular case. Id. In this case the district court made no findings of fact and essentially determined that the scope of consent was exceeded as a matter of law based on the case of State v. Arroyo-Sotelo, 131 Or.App. 290, 884 P.2d 901 (1994). The court quoted the legal conclusions in Arroyo-Sotelo extensively when the decision was rendered. The Oregon court in Arroyo-Sotelo stated "[a]bsent specific findings to suggest otherwise, a general consent to search a car does not authorize an officer to search areas of a car that are not designed to be routinely opened and accessed." Id. at 905. I do not agree that this is the general rule in Nevada or the appropriate standard. Even the Oregon court in Arroyo-Sotelo did not base its conclusion on the general proposition of law, but rather it made findings of fact based on the circumstances of the case. That is what the district court did not do.
The United States Supreme Court has stated the standard for measuring the scope of a consent to search is what a reasonable person would have understood to be the scope of the consent. Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). The Supreme Court stated:
The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable. Thus, we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonablenesswhat would the typical reasonable person have understood by the exchange between the officer and the suspect? The question before us, then, is whether it is reasonable for the officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag *49 lying on the floor of the car. We think that it is.
(Citations omitted.) Id.
Permission to search granted in general terms may be construed as a broad grant of permission to search. See United States v. Gutierrez-Mederos, 965 F.2d 800, 803-04 (9th Cir.1992). Although the burden is upon the government to prove the validity of the search, if a suspect intends to limit the scope of his general consent in any manner, the burden is upon him to do so. See United States v. Patterson, 97 F.3d 192, 195 (7th Cir.1996). However, "`[w]hen an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass.'" United States v. Harris, 928 F.2d 1113, 1117 (11th Cir.1991) (quoting United States v. Strickland, 902 F.2d 937, 941 (11th Cir.1990)).
A general consent to search is usually more than a consent to look at what is in plain view in the trunk or glove box. As stated in United States v. Snow, 44 F.3d 133, 135 (2d Cir.1995):
[T]he term "search" implies something more than a superficial examination. It entails "looking through," "rummaging," "probing," "scrutiny," and "examining internally." We therefore conclude, based on the plain meaning of this common word, that an individual who consents to a search of his car should reasonably expect that readily-opened, closed containers discovered inside the car will be opened and examined.
The concurring justices would appear to confine a consensual search to what is in plain view. Contrary to the assertion in the concurring opinion, I, as a "reasonable citizen," certainly would expect that my consent to search for drugs would encompass a search into areas that are likely to hide drugs, including under seats, carpets, and non-factory installed panels.
The case of State v. Wells, 539 So.2d 464 (Fla.1989), aff'd on other grounds, Florida v. Wells, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), is readily distinguishable from the present case. In Wells, the search of a locked briefcase within a trunk was held not to be within the scope of the consent to search the trunk; the consent was given to search the vehicle, not a locked container in the vehicle. Here, Johnson gave consent for a search of the vehicle and opening a panel in that vehicle was not, as a matter of law, beyond the scope of consent.
The consent in this case was a general consent without any explicit limitation on the scope. The evidence showed that the officer asked Johnson if he had any drugs, and Johnson stated "No, you can go ahead and look." Then the officer asked if he could search the vehicle and Johnson said "Yes." The majority concludes, in effect, that no reasonable police officer would believe that the general consent included consent to examine the underside of the glove box and upon noting previous tampering, to remove screws. I disagree. It would have been clear to the officer that a part of the vehicle, not ordinarily accessible, had been previously opened and was a compartment which easily could have contained drugs. It is not accurate to describe the action of the police officer as "dismantling the vehicle." Using such a term carries a connotation that far more was done than removing three mismatched, non-factory installed screws. The limited intrusion was not excessive, nor was it unreasonable or beyond the scope of the consent.
The scope of the consent is a factual question to be determined according to the evidence in each case. See Canada 104 Nev. at 291, 756 P.2d at 553. Not only did Johnson give a general consent to search for drugs, but there was also evidence before the court that Johnson was in a position to observe the search. He stood unconstrained at the front of the patrol car parked directly behind the vehicle being searched. The officer was not only kneeling on the ground to look under the glove box in Johnson's view, but also he passed Johnson when he returned to the patrol car for tools, and again kneeled to reach under the glove box to remove the screws. If Johnson chose not to observe the search, that was his choice. Johnson could have objected at any point that the scope of *50 the consent had been exceeded. If he wished to object to the scope, it was his burden to do so. See Patterson, 97 F.3d at 195. The evidence also indicates that Johnson saw or could have seen the officer remove the back seat and lift the carpets, which the majority contends is beyond the scope of the consent.
Evidence showing that a person giving consent failed to object to a continuation of the search supports the position that the search remained within the scope of consent. See United States v. Anderson, 114 F.3d 1059, 1065 (10th Cir.1997). A majority of the federal circuit courts that have considered the issue have concluded that the failure to object to the scope of a search is a factor to be considered in determining whether police exceeded the scope of the consent to search.[1] Moreover, this court has recognized that a person's conduct in failing to object to a search indicates a waiver of the right not to be subjected to the search. See Lee v. State, 86 Nev. 794, 796-97, 477 P.2d 157, 158 (1970) ("Silence, where there is a duty to speak or act, can amount to intelligent waiver of a constitutional right.")
Validating the search in this case is in no way an erosion of our Fourth Amendment protection against unreasonable search and seizure. Search based on consent is totally within the control of the one consenting. The consent may be withdrawn at any time. A police officer should be able to rely on the consent, especially when the search is being conducted directly in front of the one consenting.
I would reverse the order of the district court and remand the case for either a new evidentiary hearing or reconsideration of the order based on the appropriate factual findings and the applicable law.
YOUNG and MAUPIN, JJ., concur.
NOTES
[1] For the purposes of resolution of the issues before the court, we assume that Lashawn had a privacy interest sufficient to allow his challenge to the evidence obtained during the search. However, we note that this is a dubious assumption given the evidence in the record. Cf. McKee v. State, 112 Nev. 642, 645, 917 P.2d 940, 942 (1996) (a non-owner driver lacks standing to challenge a vehicle search when the owner of the car is present at the time of the search). Jessie is the registered owner of the searched vehicle. Further, Lashawn's attorney argued at the hearing on the motion to suppress, "Mr. Johnson was a passenger in the vehicle. He was merely present in this vehicle. He has no possessory interest in this vehicle at all." We question the state's failure to address the issue in response to the district court's expression of concern regarding Lashawn's standing. However, because our resolution of the issue is not necessary to proper resolution of this case, we decline to address it.
[1] In Wells, the Florida Supreme Court suppressed the fruits of the search based upon an analysis of the reasonableness of the consent given to the search. State v. Wells, 539 So.2d at 467-68. The United States Supreme Court affirmed the suppression based upon an inventory search analysis. Florida v. Wells, 495 U.S. at 3-5, 110 S.Ct. 1632.
[1] See United States v. Anderson, 114 F.3d 1059, 1065 (10th Cir.1997); United States v. McSween, 53 F.3d 684, 688-89 & n. 5 (5th Cir.1995); United States v. Cannon, 29 F.3d 472, 477 (9th Cir. 1994); United States v. Martel-Martines, 988 F.2d 855, 858 (8th Cir.1993); United States v. Berke, 930 F.2d 1219, 1222-23 (7th Cir.1991), cert. denied, 502 U.S. 896, 112 S.Ct. 269, 116 L.Ed.2d 221 (1991); Harris, 928 F.2d at 1117-18 (11th Cir.1991).