Shearing, J.,
with whom Young and Maupin, JJ., join, dissenting:
I would reverse the order of the district court suppressing the evidence found in the vehicle registered to Jessie Johnson.
The majority assumes that the district court based its decision to suppress the evidence on a finding of fact regarding the scope of the consent in this particular case as required by Canada v. State, 104 Nev. 288, 291, 756 P.2d 552, 553 (1988). The district *85 court did not do so. In Canada this court said that whether the scope of the consent is exceeded is a question of fact to be determined from the totality of the circumstances in the particular case. Id. In this case the district court made no findings of fact and essentially determined that the scope of consent was exceeded as a matter of law based on the case of State v. Arroyo-Sotelo, 884 P.2d 901 (Or. Ct. App. 1994). The court quoted the legal conclusions in Arroyo-Sotelo extensively when the decision was rendered. The Oregon court in Arroyo-Sotelo stated “[ajbsent specific findings to suggest otherwise, a general consent to search a car does not authorize an officer to search areas of a car that are not designed to be routinely opened and accessed.” Id. at 905. I do not agree that this is the general rale in Nevada or the appropriate standard. Even the Oregon court in Arroyo-Sotelo did not base its conclusion on the general proposition of law, but rather it made findings of fact based on the circumstances of the case. That is what the district court did not do.
The United States Supreme Court has stated the standard for measuring the scope of a consent to search is what a reasonable person would have understood to be the scope of the consent. Florida v. Jimeno, 500 U.S. 248, 251 (1991). The Supreme Court stated:
The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable. Thus, we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of “objective” reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? The question before us, then, is whether it is reasonable for the officer to consider a suspect’s general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car. We think that it is.
(Citations omitted.) Id.
Permission to search granted in general terms may be construed as a broad grant of permission to search. See United States v. Gutierrez, 965 F.2d 800, 803-04 (9th Cir. 1992). Although the burden is upon the government to prove the validity of the search, if a suspect intends to limit the scope of his general consent in any manner, the burden is upon him to do so. See United States v. Patterson, 97 F.3d 192, 195 (7th Cir. 1996). However, “ ‘[w]hen an individual gives a general statement of consent with *86 out express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass.’ ” United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991) (quoting United States v. Strickland, 902 F.2d 937, 941 (11th Cir. 1990)).
A general consent to search is usually more than a consent to look at what is in plain view in the trunk or glove box. As stated in United States v. Snow, 44 F.3d 133, 135 (2d Cir. 1995):
[T]he term “search” implies something more than a superficial examination. It entails “looking through,” “rummaging,” “probing,” “scrutiny,” and “examining internally.” We therefore conclude, based on the plain meaning of this common word, that an individual who consents to a search of his car should reasonably expect that readily-opened, closed containers discovered inside the car will be opened and examined.
The concurring justices would appear to confine a consensual search to what is in plain view. Contrary to the assertion in the concurring opinion, I, as a “reasonable citizen,” certainly would expect that my consent to search for drugs would encompass a search into areas that are likely to hide drugs, including under seats, carpets, and non-factory installed panels.
The case of State v. Wells, 539 So. 2d 464 (Fla. 1989), aff’d on other grounds, Florida v. Wells, 495 U.S. 1 (1990), is readily distinguishable from the present case. In Wells, the search of a locked briefcase within a trunk was held not to be within the scope of the consent to search the trunk; the consent was given to search the vehicle, not a locked container in the vehicle. Here, Johnson gave consent for a search of the vehicle and opening a panel in that vehicle was not, as a matter of law, beyond the scope of consent.
The consent in this case was a general consent without any explicit limitation on the scope. The evidence showed that the officer asked Johnson if he had any drugs, and Johnson stated “No, you can go ahead and look.” Then the officer asked if he could search the vehicle and Johnson said “Yes.” The majority concludes, in effect, that no reasonable police officer would believe that the general consent included consent to examine the underside of the glove box and upon noting previous tampering, to remove screws. I disagree. It would have been clear to the officer that a part of the vehicle, not ordinarily accessible, had been previously opened and was a compartment which easily could have contained drugs. It is not accurate to describe the action of the police officer as “dismantling the vehicle.” Using such a term *87 carries a connotation that far more was done than removing three mismatched, non-factory installed screws. The limited intrusion was not excessive, nor was it unreasonable or beyond the scope of the consent.
The scope of the consent is a factual question to be determined according to the evidence in each case. See Canada 104 Nev. at 291, 756 P.2d at 553. Not only did Johnson give a general consent to search for drugs, but there was also evidence before the court that Johnson was in a position to observe the search. He stood unconstrained at the front of the patrol car parked directly behind the vehicle being searched. The officer was not only kneeling on the ground to look under the glove box in Johnson’s view, but also he passed Johnson when he returned to the patrol car for tools, and again kneeled to reach under the glove box to remove the screws. If Johnson chose not to observe the search, that was his choice. Johnson could have objected at any point that the scope of the consent had been exceeded. If he wished to object to the scope, it was his burden to do so. See Patterson, 91 F.3d at 195. The evidence also indicates that Johnson saw or could have seen the officer remove the back seat and lift the carpets, which the majority contends is beyond the scope of the consent.
Evidence showing that a person giving consent failed to object to a continuation of the search supports the position that the search remained within the scope of consent. See United States v. Anderson, 114 F.3d 1059, 1065 (10th Cir. 1997). A majority of the federal circuit courts that have considered the issue have concluded that the failure to object to the scope of a search is a factor to be considered in determining whether police exceeded the scope of the consent to search.[1] Moreover, this court has recognized that a person’s conduct in failing to object to a search indicates a waiver of the right not to be subjected to the search. See Lee v. State, 86 Nev. 794, 796-97, 477 P.2d 157, 158 (1970) (“Silence, where there is a duty to speak or act, can amount to intelligent waiver of a constitutional right.”)
Validating the search in this case is in no way an erosion of our Fourth Amendment protection against unreasonable search and seizure. Search based on consent is totally within the control of the one consenting. The consent may be withdrawn at any time. A police officer should be able to rely on the consent, especially *88 when the search is being conducted directly in front of the one consenting.
I would reverse the order of the district court and remand the case for either a new evidentiary hearing or reconsideration of the order based on the appropriate factual findings and the applicable law.

See United States v. Anderson, 114 F.3d 1059, 1065 (10th Cir. 1997); United States v. McSween, 53 F.3d 684, 688-89 & n.5 (5th Cir. 1995); United States v. Cannon, 29 F.3d 472, 477 (9th Cir. 1994); United States v. Martel-Martines, 988 F.2d 855, 858 (8th Cir. 1993); United States v. Berk, 930 F.2d 1219, 1222-23 (7th Cir. 1991), cert. denied, 502 U.S. 896 (1991); Harris, 928 F.2d at 1117-18 (11th Cir. 1991).