*834
 
 OPINION
 

 Per Curiam:
 

 Appellant Alfredo Bautista Gama (Gama) appeals the denial of his motion to suppress evidence of illegal drugs found in his car after a search by Elko County, Nevada, law enforcement officers. Gama contends that the drug evidence is the tainted fruit of a pretextual traffic stop and must, therefore, be excluded from his trial on drug possession changes. Alternatively, Gama contends that the drugs must be suppressed because the seizure and search exceeded the scope of a traffic stop. Because the police had probable cause to stop Gama for speeding, as well as other traffic-related infractions, we conclude that the district court correctly denied Gama’s motion to suppress. We reach this conclusion regardless of whether a reasonable officer would have stopped Gama’s car in the absence of a motive to search the car for drugs, noting that we overrule prior Nevada precedent in so holding.
 

 FACTS
 

 The underlying facts of this case are largely undisputed. On May 24, 1994, at 1:30 p.m., the Elko Combined Narcotics Unit notified the Nevada Highway Patrol (NHP) that officers of the anti-drug unit were attempting to locate Gama’s car. The anti-drug officers suspected that Gama’s car might contain illegal drugs, although there is no evidence in the record that the officers had probable cause for a stop. During pre-shift briefing at NHP headquarters, NHP Trooper Michael Gyll was advised to watch for Gama’s car.
 

 At approximately 2:13 p.m., Trooper Gyll, who was traveling west on Interstate Highway 80, spotted Gama’s red Chevrolet Camaro heading east. According to Trooper Gyll, Gama’s rate of speed was seventy-three miles-per-hour, 'eight miles-per-hour over the posted speed limit of sixty-five miles-per-hour. Trooper
 
 *835
 
 Gyll testified that it is not common practice to stop a vehicle for driving seventy-three miles-per-hour in a sixty-five miles-per-hour zone; therefore, he did not stop Gama at that time. Nevertheless, because Gama’s car had been described to Trooper Gyll as “possibly carrying illegal drugs,” he turned and began following Gama’s car in order “to try to gain probable cause for a stop.” Trooper Gyll also immediately notified Elko dispatch that he had spotted Gama’s car and requested that the Elko Combined Narcotics Unit be notified.
 

 Trooper Gyll closely followed Gama’s car for some time before observing Gama, distracted by the presence of the patrol car in his rear-view mirror, nearly rear-end another vehicle. Trooper Gyll then observed Gama speeding through a forty-five miles-per-hour construction zone at fifty-six miles-per-hour. Although other drivers travelled through the forty-five miles-per-hour construction zone at fifty-six miles-per-hour, they were neither stopped nor cited. Finally, fifteen miles after first spotting Gama, Trooper Gyll stopped Gama.
 

 Trooper Gyll was soon joined by several anti-drug officers, including officers of the Elko Combined Narcotics Unit. Trooper Gyll had the four occupants of Gama’s car exit the vehicle and cited Gama for speeding in a construction zone, following too closely, and not wearing a seat belt. While Trooper Gyll was writing the citation, Elko County Deputy Sheriff Richeson walked Cleo, a narcotics-trained dog, around the outside of Gama’s car to sniff for drugs. Deputy Richeson testified that Cleo “alerted,” indicating the presence of drugs in Gama’s car. Gama’s car was then searched, and a nylon bag containing illegal drugs and “paperwork” was discovered in the right-side speaker compartment in the luggage area behind the rear passenger seat. Gama and the other occupants of the vehicle were taken into custody and transported to the Elko County jail.
 

 Gama was charged with possession of a controlled substance for sale, a felony under NRS 453.337.
 
 [1]
 
 Following a preliminary hearing, Gama moved to suppress the evidence found during the search of his car. Following a hearing on the motion to suppress in which both sides were given the opportunity to present additional evidence, the district court denied Gama’s motion. Gama then entered a guilty plea in which he reserved the right to bring the present appeal challenging the denial of his motion to suppress. On January 24, 1995, Gama was sentenced to serve five years in the Nevada State Prison.
 

 
 *836
 

 DISCUSSION
 

 Whether the evidence is the fruit of a pretextual stop
 

 Gama contends that the traffic stop was merely a pretext to search his car for drugs and, therefore, violated the Fourth Amendment of the United States Constitution and article I, section 18, of the Nevada Constitution, each of which protects against “unreasonable searches and seizures.”
 

 This court, recognizing a split of authority among the United States Circuit Courts of Appeals, recently announced that it would follow the Ninth, Tenth, and Eleventh Circuits in applying the so-called “would have” test to cases involving alleged pretex-tual traffic stops.
 
 See
 
 Alejandre v. State, 111 Nev. 1235, 1239, 903 P.2d 794, 796 (1995);
 
 see also
 
 Taylor v. State, 111 Nev. 1253, 903 P.2d 805 (1995) (applying
 
 Alejandre).
 
 In
 
 Alejandre,
 
 this court, applying the “would have” test, reversed and vacated the defendant’s drug conviction. We reasoned that, but for the improper purpose of searching defendant’s truck for drugs, a reasonable officer would not have made the stop.
 
 [2]
 

 Alejandre,
 
 111 Nev. at 1240-41, 903 P.2d at 797.
 

 However, in the time since this appeal was submitted, the United States Supreme Court has held that a vehicle stop that is supported by probable cause to believe that the driver has committed a traffic infraction is “reasonable” under the Fourth Amendment, even if a reasonable officer would not have made the stop absent some purpose unrelated to traffic enforcement.
 
 See
 
 Whren v. United States, ...... U.S. ......, 116 S. Ct. 1769 (1996). The bottom line, therefore, is that the “could have” test prevailed over the “would have” test. We are thus constrained to overrule
 
 Alejandre
 
 and
 
 Taylor
 
 to the extent they require application of the now-discredited “would have” test in resolving pretext claims under the Fourth Amendment. Moreover, because we now conclude that the Nevada Constitution’s search and seizure
 
 *837
 
 clause provides no greater protection than that afforded under its federal analogue, at least in the area of pretextual traffic stops, we now recognize the “could have” test announced in
 
 Whren
 
 as the proper test under the Nevada Constitution as well.
 
 [3]
 

 In the present case, the district court ruled on Gama’s motion to suppress prior to the filing of this court’s decision in
 
 Alejandre.
 
 Not having the benefit of our holding in
 
 Alejandre,
 
 the district court applied the less-stringent “could have” formulation of the pretext rule. The district court, therefore, applied the proper rule of law. Accordingly, as there is clearly substantial evidence in the record to establish probable cause for a traffic stop, we conclude that Gama’s contention that he was subjected to a pretextual traffic stop is without merit.
 

 Whether the seizure and search were unreasonable in scope.
 

 “[I]n determining whether the seizure and search were ‘unreasonable’ our inquiry is a dual one—whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” Terry v. State of Ohio, 392 U.S. 1, 19-20 (1968). Gama contends that the police had no legal justification to detain him or to search his vehicle and that he should have been allowed to proceed after the citation was written. We have already concluded that the seizure and search were reasonable at their inception. We now address the issue of whether the conduct of the officers was unreasonable in scope.
 

 The district court found that the narcotics unit, including the drug dog, Cleo, arrived on the scene prior to the time that the citation was completed. The district court also found no evidence in the record to indicate that Trooper Gyll was dilatory in issuing
 
 *838
 
 the citation. Finally, the district court found that the "sniff" of the vehicle was not a "search" for Fourth Amendment purposes and, because the "sniff" was conducted while Gama was lawfully detained for the traffic violations, did not constitute a "seizure." See State v. Barker, 850 P.2d 885, 891 (Kan. 1993) (use of a dog to sniff the exterior of a vehicle is not a "search" for the purposes of the Fourth Amendment); see also United States v. Place, 462 U.S. 696 (1983) (use of drug dog to sniff defendant's luggage at airport not "search").
 

 The district court's order makes it clear that the stop was neither unreasonably lengthy nor unreasonably intrusive for a traffic stop. We have reviewed the record and conclude that the district court's findings are supported by substantial evidence. Accordingly, Gama's contention that the scope of his detention was unreasonable in light of the legal justification for the stop is without merit.
 
 [4]
 

 CONCLUSION
 

 We conclude that the stop was supported by probable cause to believe that Gama had violated various Nevada traffic laws. We further conclude that the stop was reasonably related in scope to the circumstances which justified the interference in the first place. Finding no error in the order denying Gama's motion to suppress, we affirm the district court's judgment of conviction.
 

 [1]
 

 Gama was charged with possession of 507 grams — approximately one pound — of marijuana.
 

 [2]
 

 In
 
 Alejandre,
 
 a NHP trooper, after being told to “develop probable cause” to stop Alejandre’s truck, stopped Alejandre for twice crossing over the fog line (the white line on the right-hand side of the road) by about “a tire width.”
 
 Alejandre,
 
 111 Nev. at 1238, 903 P.2d at 795. In
 
 Taylor,
 
 NHP troopers, on their own initiative, stopped Taylor with the intention of issuing a repair order for a burned-out brake light and also because Taylor’s slow rate of speed triggered the troopers’ suspicion that Taylor might be intoxicated. After determining that Taylor was driving on a suspended license, the troopers arrested him. An inventory search of Taylor’s vehicle uncovered illicit drugs. This court affirmed a drug conviction, concluding that “any reasonable officer, absent suspicion of an unrelated serious crime, would have pulled over Taylor’s vehicle.”
 
 Taylor,
 
 111 Nev. at 1257, 903 P.2d at 808.
 

 [3]
 

 We note that the United States Supreme Court did not directly refute the defendant’s argument in
 
 Whren
 
 that the use of vehicles is so heavily regulated as to create the opportunity, and thus the temptation, for police to use traffic stops as a means of investigating other violations for which they lack grounds for a seizure. Instead, the court reasoned that prior cases “foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved” and that the “would have” formulation is “plainly and indisputably driven by subjective determinations.” ..... U.S. at ...., 116 S. Ct. at 1774. We therefore continue to have the same concerns we expressed in
 
 Alejandre
 
 regarding the use of minor traffic infractions as a general law enforcement tool for investigating serious crimes. We fear that the practice may result in substantial inconvenience and annoyance for many otherwise law-abiding Nevadans. Nevertheless, in light of
 
 Whren,
 
 we conclude that Nevada motorists must look either to constitutional provisions other than those prohibiting unreasonable searches and seizures or to the Nevada Legislature if they desire to afford themselves greater protection against pretextual traffic stops.
 

 [4]
 

 Gama further argues that the court erred in finding that he consented to allow the dog to sniff the exterior of the Camaro. We conclude that this contention is also without merit. As noted in the statement of facts, above, two officers testified that Gama consented to the search. In any case, the "sniff" of the exterior of Gama's car was not a "search" and thus required no consent. Furthermore, once the dog "alerted" to the presence of drugs in Gama's car, the officers had an independent legal justification for searching Gama's car, thereby obviating Gama's consent.