PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EMILIANO W. ALVARADO a/k/a
Alvarado-Guerra,

Defendant - Appellant.

No. 05-4064

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 04-CR-134-DAK)

---

Stephen R. McCaughey, Salt Lake City, Utah, for Defendant - Appellant.

Diana Hagen, Assistant United States Attorney, Paul M. Warner, United States
Attorney, District of Utah, Salt Lake City, Utah, for Plaintiff - Appellee.

---

Before **BRISCOE**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Emiliano Alvarado entered a conditional plea of guilty to one count of

possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1),

reserving his right to appeal the district court's denial of his motion to suppress. He now appeals that ruling, arguing that the district court erred in holding that the police stop of his vehicle was reasonable based on a single instance of crossing over the right fog line of the highway, where the relevant Utah statute requires driving "as nearly as practical entirely within a single lane." Utah Code Ann. § 41-6-61(1).[1] We affirm.

## BACKGROUND

At approximately 3 p.m. on February 19, 2004, Utah Highway Patrol Trooper Nick Bowles was driving eastbound on Interstate 70 and observed a Jeep Cherokee, which Alvarado was driving, cross "about a foot" over the right fog line of the highway, continue traveling over the line "for a few seconds," and then cross back to the righthand lane. Mot. to Suppress Hr'g, R. Vol. II at 5. According to Trooper Bowles' testimony and the findings of the district court, "[i]t was a clear and sunny day with no wind or other adverse weather conditions." Mem. Decision & Order at 2, R. Vol. I. The highway at that location "was straight and flat" and "was dry at the time," with "no pot holes,

---

[1]Although it has no relevance to our analysis in this case, we note that in 2005, Utah Code Ann. § 41-6-61 was renumbered and amended by changing its wording to active voice. See Utah Code Ann. § 41-6a-710(1)(a). We refer herein to the provision as it existed at the time of the vehicle stop in question.

debris, or other obstructions in the roadway." Id. Based on these "ideal driving conditions," id., Trooper Bowles testified that he "felt there was no reason" for the Jeep "to be crossing the line" and was therefore "concerned that [the driver] might be impaired or fatigued." Mot. to Suppress Hr'g, R. Vol. II at 5. According to Trooper Bowles, the majority of accidents that he had handled on Interstate 70 involved "single vehicle rollovers, most of which are caused by vehicles crossing the fog line, either they never correct themselves and go off or else they over-correct and come back on and roll." Id. at 20. Trooper Bowles was also aware that failing to maintain one's vehicle in a single lane was a traffic infraction under Utah state law.

Thus, after observing the Jeep cross the fog line, Trooper Bowles "turned on his emergency lights and pulled over [Alvarado]." Mem. Decision & Order at 2, R. Vol. I. Trooper Bowles asked Alvarado to sit in the front passenger seat of the patrol car, where the trooper asked him about his travel plans while dispatch ran a check on Alvarado's license, registration, and criminal history. Trooper Bowles then gave Alvarado a written warning for crossing the fog line, returned Alvarado's documents, and told him "you're free to leave, drive safely." Id. at 4.

As Alvarado was returning to the Jeep, Trooper Bowles asked him if he could talk with him for another minute. Alvarado agreed. Subsequently, the trooper asked Alvarado for permission to search the vehicle, and Alvarado

consented. During the search, Trooper Bowles discovered illegal narcotics hidden in the rear of the Jeep and consequently placed Alvarado under arrest.

Alvarado was charged with one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). He moved to suppress the evidence of drugs, arguing that his initial stop was illegal, that he had not given valid consent to search the vehicle, and that the trooper did not have probable cause to search or detain the vehicle. In denying this motion, the district court reasoned that Trooper Bowles was justified in stopping the Jeep because Utah Code Ann. § 41-6-61(1) required remaining in a single lane "as nearly as practical," and "the record in this case does not contain evidence of other conditions or circumstances that would make it impractical for [Alvarado] to drive the vehicle within a single lane." Mem. Decision & Order at 10, R. Vol. I.

The court therefore held that the initial stop was reasonable under the Fourth Amendment because it was supported by a reasonable articulable suspicion that Alvarado was in violation of the Utah statute. The court further held that the traffic stop became a consensual encounter after Alvarado's documents were returned and he was told he was free to leave, and that Alvarado voluntarily consented to the search of the Jeep. Alvarado then entered a plea of guilty to the single count in the indictment but reserved his right to appeal the

district court's order denying his motion to suppress.  He filed a timely notice of appeal of that order, raising only the issue of the reasonableness of the initial stop.

## DISCUSSION

In reviewing a district court's denial of a motion to suppress evidence, "we accept the factual findings of the district court, and its determination of witness credibility, unless they are clearly erroneous." United States v. Cline, 349 F.3d 1276, 1286 (10th Cir. 2003) (internal quotation omitted).  "In conducting our review, we consider the evidence in the light most favorable to the district court's ruling." United States v. Zabalza, 346 F.3d 1255, 1258 (10th Cir. 2003).  However, "[w]e review de novo the 'ultimate determination of reasonableness under the Fourth Amendment.'" Cline, 349 F.3d at 1286 (quoting United States v. Cervine, 347 F.3d 865, 868 (10th Cir. 2003)).

Alvarado's sole argument on appeal relates to the reasonableness of Trooper Bowles' initial stop of his vehicle.  We have held that, in order to satisfy the Fourth Amendment's reasonableness requirement, a law enforcement officer "'must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping [an] automobile.'" Cervine, 347 F.3d at 869 (quoting United States v. Soto, 988 F.2d 1548, 1554 (10th Cir.

-5-

1993)).  Thus, "[w]hen evaluating the reasonableness of the initial stop [of a vehicle], '[o]ur sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" Zabalza, 346 F.3d at 1258 (quoting United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc)) (further quotation omitted).

Here, the relevant Utah statute in effect at the time of the stop provided that "[a] vehicle shall be operated as nearly as practical entirely within a single lane." Utah Code Ann. § 41-6-61(1).  We have previously addressed the validity of traffic stops in relation to this statute and a similar Kansas statute, Kan. Stat. Ann. § 8-1522 (requiring vehicles to be driven "as nearly as practicable entirely within a single lane"), in a number of cases.  In United States v. Gregory, 79 F.3d 973 (10th Cir. 1996), the officer had stopped a truck after it "briefly crossed into the right shoulder emergency lane" where "[t]he road was winding, the terrain mountainous and the weather condition was windy." Id. at 978.  We held that the stop was unreasonable in light of the Utah statute's qualification that vehicles remain in a single lane only "as nearly as practical," reasoning that under the particular weather and road conditions present on that occasion, "any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway, without giving rise to a suspicion of criminal activity." Id.; see

-6-

Cervine, 347 F.3d at 869 (interpreting Gregory); see also State v. Bello, 871 P.2d 584, 587 (Utah Ct. App. 1994) (holding that an officer improperly stopped a truck for briefly moving out of its lane because Utah Code Ann. § 41-6-61(1) was not violated by a single instance of weaving where it was "extremely windy" and the truck had a camper shell "that caused it to catch the wind more easily than other vehicles").

Subsequent to our decision in Gregory, we have emphasized that that case does not "stand[] for the proposition that a single instance of drifting onto the shoulder can *never* be a violation of a traffic statute like section [41-6-61(1)]." Cline, 349 F.3d at 1287. Rather, a court must "analyze objectively all the surrounding facts and circumstances to determine whether" the officer had reasonable suspicion that a violation of the statute had occurred. United States v. Ozbirn, 189 F.3d 1194, 1198 (10th Cir. 1999). Thus, in Ozbirn, we held the traffic stop was reasonable where no "adverse physical conditions existed" and the driver of a motor home passed over onto the shoulder "twice within a quarter mile." Id. We reached the same conclusion in Zabalza where the officer observed the vehicle cross the center line twice, 346 F.3d at 1258, and in Cline where the officer observed the truck "swerve" onto the shoulder of the road, nearly hitting a bridge abutment, 349 F.3d at 1287.

Here, as indicated above, the district court found that, similar to the situation in <u>Ozbirn</u>, <u>Zabalza</u>, and <u>Cline</u>, there were no adverse weather or road conditions that might have made it impractical for Alvarado to prevent his vehicle from drifting out of the righthand lane and over the fog line. Based on our review of the record, this finding is not clearly erroneous. Alvarado attempts to distinguish the circumstances of this stop from those present in the above-mentioned cases in that here, unlike in <u>Cline</u>, there were no "roadside structures that would have alerted him of the need to stay clear of the shoulder of the road," and, unlike in <u>Ozbirn</u>, "Alvarado's vehicle crossed the fog line only once." Appellant's Br. at 9.

We are unpersuaded that these distinctions warrant a different conclusion in this case. Alvarado has failed to point to any objective factor that might have made it impractical for him to remain in a single lane. Rather, his argument rests solely on the proposition that "[a] reasonable driver operating a motor vehicle at or near interstate speed limits has a difficult task of operating the vehicle entirely within a single lane for the entirety of his trip" and that "[v]ehicles traveling at interstate speeds, even with optimal road and weather conditions, do not typically stay in the exact center of the lane." <u>Id.</u> at 11. Essentially, Alvarado asks us to hold that an officer must observe something more than a single lane crossing in order to reasonably suspect a violation of Utah Code Ann. § 41-6-61(1) has

occurred because any driver on the highway might inadvertently cross out of his lane once, regardless of the conditions that are present. However, as explained above, we have already rejected the argument that the "as nearly as practical" qualification in § 41-6-61(1) requires the conclusion, as a matter of law, that a single instance of crossing over the fog line can never violate the statute. Rather, as previously discussed, we understand it to require a fact-specific inquiry into the particular circumstances present during the incident in question in order to determine whether the driver could reasonably be expected to maintain a straight course at that time in that vehicle on that roadway.

Under the particular facts and circumstances of this case, where there is an utter absence of any weather conditions, road features, or other circumstances that could have interfered with Alvarado's ability to keep his vehicle in a single lane, we hold that Trooper Bowles had a reasonable articulable suspicion that Alvarado, by crossing one foot over the fog line, had violated § 41-6-61(1). The initial stop of Alvarado's Jeep was therefore reasonable under the Fourth Amendment. Because Alvarado raises no other objection on appeal, we therefore affirm the district court's order.

**CONCLUSION**

For the foregoing reasons, the district court's denial of Alvarado's motion to suppress is AFFIRMED.