UNITED STATES of America,
Plaintiff–Appellee,

v.

Pablo DELGADO–HERNANDEZ,
Defendant–Appellant.

No. 06–10572.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2007.

Filed June 19, 2008.

Robert L. Ellman, Patrick M. Walsh, USLV—Office of the U.S. Attorney, Las Vegas, NV, for Plaintiff–Appellee

Jose C. Pallares, Jose C. Pallares, Ltd., Las Vegas, NV, for Defendant–Appellant.

Before: BRIGHT [*], FARRIS, and THOMAS, Circuit Judges.

## MEMORANDUM [**]

Pablo Delgado–Hernandez ("Delgado–Hernandez") appeals the district court's denial of his motion to suppress evidence seized during a traffic stop. Following the denial of his motion, Delgado–Hernandez entered a conditional guilty plea for violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), Possession of a Controlled Substance with Intent to Distribute. He is currently serving a forty-six-month sentence. Because the evidence seized from Delgado–Hernandez's car followed an unconstitutional traffic stop, we REVERSE.

## I

On the night of August 3, 2004, Nevada Highway Patrol ("NHP") Trooper Eddie Dutchover and Las Vegas Metropolitan Police Detective Corey Mikkelson were patrolling Interstate 15 ("I–15") in Clark County, Nevada, as part of the Southern Nevada Interdiction Task Force. At approximately 9:00 p.m., they were traveling northbound on I–15 in lane number one near mile marker twenty-seven when they first noticed Delgado–Hernandez's car, a white Buick LeSabre. Northbound I–15 at that mile marker is straight and even and consists of three lanes-numbers one, two and three. A gravel and concrete median divides the northbound and southbound lanes. The number one lane is closest to the median and is bounded on the left by a solid yellow line (or "fog line"). Approximately eight feet of pavement lies between the yellow line and gravel edge of the median. The weather that night was clear, and the only artificial lighting came from the headlights of vehicles traveling on the highway.

At the suppression hearing, Dutchover and Mikkelson testified [1] that they ob-

[*] The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

[**] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The suppression hearing was held before United States Magistrate Judge George Foley,

served Delgado–Hernandez's car traveling at approximately the posted speed limit of seventy miles per hour in the number one lane. They testified that they too were traveling at approximately the posted speed limit. Dutchover (who was driving) further testified that after observing the Buick for a few seconds he saw its left front and rear wheels cross over the fog line by approximately twelve to fourteen inches.[2] After a few seconds, Dutchover observed the Buick move completely back into the number one lane. At that point, Dutchover activated his emergency lights and siren to pull over the Buick. The Buick pulled over to the side of the road in an orderly manner.

Both officers testified they did not observe any ruts or other road conditions that would have caused the Buick to move over the fog line. They also did not observe Delgado–Hernandez engage in any unusual driving or commit any other traffic violations. And so, the officers' lone basis for pulling over the Buick was that it crossed the fog line for a few seconds.[3] This they believed violated Nevada Revised Statutes § 484.305(1) ("NRS § 484.305(1)"), which provides:

1. If a highway has two or more clearly marked lanes for traffic traveling in one direction, vehicles must:

(a) Be driven as nearly as practicable entirely within a single lane; and

(b) Not be moved from that lane until the driver has given the appropriate

turn signal and ascertained that such movement can be made with safety.

Dutchover testified that he explained to Delgado–Hernandez that he was stopped because he crossed over the fog line, in violation of NRS § 484.305(1), but that he was free to go without a ticket or citation. Because Dutchover suspected Delgado–Hernandez was transporting illegal narcotics, however, he asked Delgado–Hernandez permission to search the Buick. Delgado–Hernandez consented to the search in writing. As a result of the search, the officers found cocaine inside the trunk of the car.[4] Delgado–Hernandez was then arrested and subsequently indicted for possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841.

On September 27, 2005, the magistrate judge issued a Report and Recommendation that the district court grant Delgado–Hernandez's motion to suppress evidence seized during the August 3, 2004 traffic stop. The magistrate judge concluded that by momentarily crossing over the fog line Delgado–Hernandez did not violate NRS § 484.305(1). Thus, the magistrate judge held that the officers did not have a lawful basis to stop Delgado–Hernandez's car. The Government timely objected to the magistrate judge's Report and Recommendation.

Although the district court adopted the magistrate judge's factual findings, it rejected his legal conclusions. Relying on *Alejandre v. State*, 111 Nev. 1235, 903 P.2d 794 (1995), *rev'd on other grounds by*

---

Jr. The magistrate judge found both officers credible. Delgado–Hernandez does not challenge this finding on appeal.

**2.** Mikkelson testified that the Buick had crossed over the yellow line by approximately eighteen to twenty-four inches. Both officers conceded, however, that Dutchover's approximation was probably more accurate because Mikkelson was seated in the passenger seat. Delgado–Hernandez did not contest the offi-

cers' observations that he crossed over the fog line.

**3.** There was no testimony as to the precise length of time the Buick had crossed over the fog line.

**4.** The propriety of the consensual search is not an issue on appeal.

*Gama v. State,* 112 Nev. 833, 920 P.2d 1010 (1996), the district court concluded that Delgado–Hernandez's conduct violated NRS § 484.305(1), and therefore the officers had a lawful basis to stop his vehicle. Accordingly, the district court denied Delgado–Hernandez's motion to suppress. This appeal followed.

## II

We review a district court's denial of a motion to suppress *de novo,* and its factual findings for clear error. *See United States v. Willis,* 431 F.3d 709, 713 n. 3 (9th Cir. 2005) (citing *United States v. Fernandez–Castillo,* 324 F.3d 1114, 1117 (9th Cir. 2003)). And in doing so, we view the facts in the light most favorable to the Government. *See United States v. Cervantes–Gaitan,* 792 F.2d 770, 772 (9th Cir.1986).

## III

Delgado–Hernandez argues that the initial stop of his vehicle was unconstitutional. Because an automobile stop is a seizure within the meaning of the Fourth Amendment, the police cannot just stop a car for any reason. *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In order to justify an investigative traffic stop, the police must have "reasonable suspicion" to believe that a traffic law has been broken (or other criminal conduct is afoot). *See, e.g., United States v. Lopez–Soto,* 205 F.3d 1101, 1104–05 (9th Cir.2000). Reasonable suspicion is formed by "specific, articulable facts

which, together with objective and reasonable inferences, form the basis for suspecting that [a] particular person detained is engaged in criminal activity." *Id.* at 1105 (internal quotation marks omitted). In general, a police officer's decision to stop an automobile will be upheld when he has a reasonable suspicion to believe that a traffic violation has occurred. *See Willis,* 431 F.3d at 714. An officer's good faith but mistaken belief that a motorist committed a traffic violation, however, does not justify a stop under the Fourth Amendment. *See United States v. Morales,* 252 F.3d 1070, 1073 n. 3 (9th Cir. 2001) (citing *Lopez–Soto,* 205 F.3d at 1106). Therefore, if Delgado–Hernandez's conduct did not violate NRS § 484.305(1), the officers, regardless of what they believed, violated his Fourth Amendment rights by stopping his vehicle. And thus, the cocaine subsequently seized from the trunk would have to be suppressed as the fruit of the poisonous tree. *See id.* at 1073. We must therefore decide whether Delgado–Hernandez violated NRS § 484.305(1) by momentarily crossing the fog line.[5]

Again, NRS § 484.305(1) provides:

1. If a highway has two or more clearly marked lanes for traffic traveling in one direction, vehicles must:

(a) Be driven *as nearly as practicable* entirely within a single lane; and

(b) Not be moved from that lane until the driver has given the appropriate

---

5. This Court has previously considered whether a driver's conduct violated NRS § 484.305(1). *United States v. Gabriel Garcia,* 205 F.3d 1182, 1187 (9th Cir.2000) ("Garcia does not dispute that the vehicle was weaving within its lane or that it later crossed onto the shoulder of the highway. Trooper Greb had probable cause to pull the vehicle over based on its failure to maintain a single travel lane, in violation of Nev.Rev.Stat. § 484.305.").

We have also considered whether a driver violated NRS § 484.305(1) in two unpublished decisions. *See United States v. Garcia,* 139 Fed.Appx. 887, 889 (9th Cir.2005) (unpublished); *United States v. Zarza,* No. 99–10558, 2000 WL 1160831, 2000 U.S.App. LEXIS 21002 (9th Cir.2000) (unpublished), *cert. denied,* 531 U.S. 1094, 121 S.Ct. 819, 148 L.Ed.2d 703 (2001).

turn signal and ascertained that such movement can be made with safety.

(Emphasis added).

Delgado–Hernandez, relying on cases interpreting other states' traffic laws, argues that a single instance of driving over the fog line does not violate NRS § 484.305(1). *See United States v. Colin,* 314 F.3d 439, 444–45 (9th Cir.2002) (holding that a driver does not violate similarly worded California vehicle code section when touching fog line for approximately ten seconds); *Rowe v. State,* 363 Md. 424, 769 A.2d 879, 889 (2001) ("momentary crossing of the edge line of the roadway and later touching of that line did not amount to an unsafe lane change or unsafe entry onto the roadway" in violation of Maryland statute similar to NRS § 484.305(1)); *see also United States v. Freeman,* 209 F.3d 464, 466 (6th Cir. 2000) (finding no probable cause based on single incident of a large motor home crossing the fog line for a few feet).

The Government responds that this Court's decision in *Garcia,* 205 F.3d 1182 (9th Cir.2000), and the Nevada Supreme Court's decision in *Alejandre,* 903 P.2d 794, compels affirming the district court. It argues that these two cases make clear that a driver violates NRS § 484.305(1) by crossing over—even momentarily—a fog line. The Government further contends that if *Garcia* or *Alejandre* do not control the outcome here, Delgado–Hernandez nevertheless violated NRS § 484.305(1) because other courts have consistently held that even a single, brief instance of crossing over a fog line violates similarly worded statutes requiring drivers to drive "as nearly as practicable entirely within a single lane." *See United States v. Herrera Martinez,* 354 F.3d 932, 934 (8th Cir.2004) (*per curiam* ) (affirming district court decision that "a single incident of crossing the fog line was a violation of a South Dakota statute requiring the driver to stay 'as

nearly as practicable' within one traffic lane"), *vacated on other grounds,* —— U.S. ——, 127 S.Ct. 1125, 166 L.Ed.2d 889 (2007) (vacating Herrera Martinez's sentence on *Booker* grounds); *United States v. Ozbirn,* 189 F.3d 1194, 1198 (10th Cir. 1999) (motor home that drifts onto "shoulder twice within a quarter mile under optimal road, weather and traffic conditions" violates Kansas statute requiring drivers to stay "as nearly as practicable" in a single lane); *see also United States v. Alvarado,* 430 F.3d 1305, 1309 (10th Cir. 2005) (single incident of crossing over fog line under optimal road and weather conditions violates Utah statute nearly identical to NRS § 484.305(1)).

Neither *Garcia* nor *Alejandre* resolves this case. In *Garcia,* a Nevada Highway Patrol Trooper began following Garcia's vehicle after believing its rear right tail light was inoperative. After determining that the light worked, the trooper observed the vehicle " 'swerve[ ] slightly within its lane, [but] not break[ ] the lane lines.' " *Garcia,* 205 F.3d at 1184. Believing that this swerving was consistent with the driving pattern of " 'an intoxicated driver or tired driver,' " he continued to follow Garcia. *Id.* The trooper then observed the vehicle's left tires cross into lane one and back into lane two. *Id.* A few hundred yards later, Garcia signaled to change lanes, did so, but while passing a truck swerved " 'over the center yellow line into the paved shoulder throwing dirt and debris up.' The vehicle then 'slightly jerked back into [its] lane' and continued to pass the truck." *Id.* We held Garcia's erratic driving violated NRS § 484.305(1) because he "fail[ed] to maintain a single travel lane." *Id.* at 1187.

In contrast here, there is no evidence that Delgado–Hernandez drove erratically. The officers testified that he drove at approximately the posted speed limit and the

only time he failed to keep his vehicle entirely within its lane was when the left tires of his vehicle momentarily crossed the fog line onto the shoulder. Delgado–Hernandez did not try to pass any other vehicles on the road. And there is no evidence that he swerved within his lane. Indeed, the officers acknowledged they had no other basis for stopping Delgado–Hernandez except for the brief fog line crossing. In short, Delgado–Hernandez's driving is a far cry from the erratic driving pattern present in *Garcia.* Moreover, we never intimated in *Garcia* that a driver violates NRS § 484.305(1) by failing, for a *single, brief* instance, to stay within a single traffic lane.

As for *Alejandre,* we believe its discussion of NRS § 484.305(1) is *dictum*—a point on which the Government agreed in its brief before this Court. In *Alejandre,* the Nevada Supreme Court confronted the issue of whether a police officer who makes a pre-textual traffic stop—one performed with an "improper purpose"—violates the Fourth Amendment. *See Alejandre,* 903 P.2d at 796–97. In the course of deciding that a police officer violates the Fourth Amendment by making a pre-textual traffic stop,[6] the *Alejandre* court mentioned in a footnote that "[c]rossing over the fog line **is apparently** a violation of NRS § 484.305(1) which states, in relevant part, that 'vehicles shall be driven *as nearly as practicable* entirely within a single lane....'" 903 P.2d at 797 n. 2 (italics in original, bold added). Because the officer conceded he stopped the defendant with an "improper purpose," however, the *Alejandre* court did not have to actually decide

whether the defendant's conduct of crossing a fog line twice violated NRS § 484.305(1). *See id.* at 796–97. *Alejandre* is also factually distinguishable from this case. Unlike here, where Delgado–Hernandez crossed over the fog line once, the defendant in *Alejandre* crossed over it *twice. See id.* at 795. In short, *Alejandre* does not control and its *dictum* is unpersuasive. The district court erred in concluding otherwise.

Not bound by controlling precedent, we conclude that Delgado–Hernandez did not violate NRS § 484.305(1) by briefly crossing over the fog line once. In reaching this conclusion, we part ways with those courts that have held a driver violates such a statute by *momentarily* leaving his lane of travel-even under optimal driving conditions. *E.g., Alvarado,* 430 F.3d at 1309 ("[W]e have already rejected the argument that the 'as nearly as practical' qualification in [Utah's equivalent to NRS § 484.305(1) ] requires the conclusion, as a matter of law, that a single instance of crossing over the fog line can never violate the statute."); *Ozbirn,* 189 F.3d at 1198–99. We do so because we believe to correctly interpret NRS § 484.305(1) requires focusing on: (a) its purpose as a traffic safety statute; and (b) its language requiring that a driver only drive "*as nearly as practicable* entirely within a single lane." NRS § 484.305(1)(a) (emphasis added); *see also Dolan v. U.S. Postal Service,* 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006) ("A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading

---

**6.** With respect to this point of law, the United States Supreme Court subsequently held that an officer's subjective intentions play no role in evaluating the reasonableness of a traffic stop and subsequent search. *See Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In other words, if a

police officer has a reasonable basis to stop a vehicle (e.g., the driver violated the traffic laws), it is irrelevant that the officer would not have otherwise stopped the vehicle if he didn't also suspect some other, unrelated criminal activity.

the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) ("[T]he meaning of statutory language, plain or not, depends on context.").

First, as a "rule of the road", NRS § 484.305(1)'s primary purpose is to promote safety on multi-lane roads. *See Rowe*, 769 A.2d at 885 (finding that the purpose of a nearly identical Maryland traffic law provision, Md.Code Ann. Transp. § 21–309(b), is to "promote safety on laned roadways"); *see also* Nev.Rev. Stat. § 484.011(2) (The purpose of traffic laws chapter is to "[m]inimize the differences between the traffic laws of the State of Nevada and those of other states."). Thus, in evaluating whether a driver violates NRS § 484.305(1) it is proper for courts to consider whether, under the circumstances presented, the driver's conduct did threaten, or could be reasonably construed as potentially threatening, the safety of other motorists, pedestrians or bystanders. Viewing Delgado–Hernandez's conduct from this perspective, it is clear that by momentarily crossing over the fog line he did not endanger anyone.

Second, NRS § 484.305(1)'s plain language contemplates circumstances under which a driver may, with or without reason, momentarily leave his lane of travel without violating the statute. Otherwise the "as nearly as practicable" language is mere surplusage if a driver violates the statute whenever, absent a legal lane change, he fails to remain in a single lane on a multi-lane road. *See, e.g., Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) ("We are ...' reluctan[t] to treat statutory terms as surplusage' in any setting.") (quoting *Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 698, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995)). In our view, NRS § 484.305(1)'s command that drivers remain in a single lane "as nearly as practicable" requires nothing more than they stay in a single lane to the degree that it "is reasonably capable of being accomplished [or] feasible." *Black's Law Dictionary* 1210 (8th ed.2004). Thus, in light of the entire language of the statute, a driver who briefly fails to stay within his lane of travel does not violate NRS § 484.305(1). Based on that interpretation of the statute and the record before us, we cannot say that Delgado–Hernandez failed to drive "as nearly as practicable" entirely within a single lane.

By crossing over the fog line for a brief instance, Delgado–Hernandez neither posed a safety threat nor failed to drive as nearly as practicable within a single lane. Because his conduct did not violate NRS § 484.305(1), the district court erred in concluding that the officers had reasonable suspicion to stop Delgado–Hernandez.[7]

7.  Some state courts have held that statutes like NRS § 484.305(1) impose only a single duty on drivers: make safe lane changes. *See Rowe*, 769 A.2d at 889 (In order to violate Maryland's version of NRS § 484.305(1), a driver must not only fail to stay as nearly as practicable in a single lane, but the movement must be such as to "amount to an unsafe lane change or unsafe entry onto the roadway."); *Hernandez v. State*, 983 S.W.2d 867, 871 (Tex. App.1998) ("We believe the statutory language shows a legislative intent that a violation of [Texas's equivalent to NRS § 484.305(1)] occurs only when a vehicle fails to stay within its lane *and* such movement is not safe or is not made safely. Neither the current provision in the ... Code nor the original statute creates two separate offenses, but rather only one: moving out of a marked lane when it is not safe to do so.") (emphasis in original). These courts have thus reasoned that failing to stay in a single lane without more does not violate a traffic statute like NRS § 484.305(1). Other states have, however, interpreted such statutes as

## IV

For the foregoing reasons, we RE-VERSE the district court's denial of Del-gado–Hernandez's motion to suppress and VACATE his conviction.

imposing two separate duties on drivers: (1) stay in a single lane; and (2) make lane changes safely. *See Colin,* 314 F.3d at 443–44 (observing that California courts have held that its version of NRS § 484.305(1) imposes two separate duties on drivers); *People v. Smith,* 172 Ill.2d 289, 216 Ill.Dec. 658, 665 N.E.2d 1215 (1996) (same under Illinois law).

Nevada courts have not squarely decided whether NRS § 484.305(1) imposes one or two duties on drivers. *See Nevada v. Eighth* *Jud. Dist. Ct. of Nev.,* 116 Nev. 127, 994 P.2d 692, 699 (2000) (The "gravamen of a charge for violating NRS § 484.305(1) is that the driver changed a direct course of travel without giving the proper signal.").

We need not decide this issue, because it is sufficient for this case that by driving "as nearly as practicable entirely within a single lane" Delgado–Hernandez did not violate NRS § 484.305(1).